Todd M. Touton, Esq. #1744
Jennifer L. Braster, Esq. #9982
LIONEL SAWYER & COLLINS
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone: 702-383-8888
Fax: 702-383-8845
ttouton@lionelsawyer.com

Attorneys for Plaintiff, Del Webb Communities, Inc.

## UNITED STATES DISTRICT COURT

## CLARK COUNTY NEVADA

| | | |
|---|---|---|
| DEL WEBB COMMUNITIES, INC., | ) | Case No. 2:08-cv-00571-RCJ-GWF |
| Plaintiff, | ) | |
| | ) | **REPLY IN SUPPORT OF PLAINTIFF'S** |
| vs. | ) | **MOTION FOR PARTIAL SUMMARY** |
| | ) | **JUDGMENT** |
| CHARLES LESLIE PARTINGTON d/b/a | ) | |
| M.C. MOJAVE CONSTRUCTION; JOHN | ) | |
| WILSON, individually; and DOE | ) | |
| INDIVIDUALS I-X, inclusive; and ROE | ) | |
| ENTITIES I-X, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

### I.     Introduction

Defendants argue they have proved beyond dispute in law and fact that no NRS Chapter 645D licensing is required for their home inspection business.  Their theory, based on inadmissible "expert" opinions of home inspector Glenn Curtis and general contractor Richard Franklin, ignores the actual terms of NRS Chapter 645D and its legislative history, the Court's Preliminary Injunction Order ("PIO," Doc. 34), and federal law barring expert testimony to prove the meaning and applicability of domestic law.

Not only are the legal opinions of defendants' experts barred, but one of them, Richard Franklin, is also disqualified because of personal bias.  Mr. Franklin has not only knowingly assisted his new friend and business partner, defendant Wilson, in violating the PIO by allowing Wilson to continue conducting illegal home inspections, including within Sun City Anthem,

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

through Franklin's B-2 general contractor's license for a 25% share of Wilson's illegal profits, but Mr. Franklin himself advertises and conducts home inspections with only a B-2 general contractor's license.[1]  What could be expected of Mr. Franklin other than a vigorous endorsement of home inspections without NRS Chapter 645D licensing?  Defendants' other inspection law expert, Glenn Curtis, opines that defendants Wilson and Partington are "'contractors' in-fact, by definition and by Statute and are exercising their knowledge and 'license' in pursuit of that vocation" based on an entry in *Wikipedia* and an article in a New Hampshire newspaper, substituting those references for the actual statutes and reported intent of the Nevada Legislature.[2]

Defendants' arguments fail because their unlicensed inspections are based on materially deceptive solicitations made in interstate commerce, performed in violation of Nevada prohibitions against champerty and maintenance, intended to disrupt Del Webb's warranty programs, and merit bar by permanent injunction and an award of fees in favor of Del Webb.  Defendants' efforts to raise a smokescreen by questioning the merits of 550 Chapter 40 claims generated by their illegal inspections in Sun City Anthem and by musing on the possible effect of a judgment in this case on Mr. Wilson's potential ability to testify as an expert in Nevada state courts (although he has never done so before[3]) also fail.  NRS 50.275 (governing the admissibility of expert testimony) and Hallmark v. Eldridge, 189 P.3d 646 (Nev. 2008) (adopting the gatekeeping rules of Daubert v.

---

[1]     Wilson's March 20, 2009, Affidavit (Opposition Exhibit N) refers to Franklin when Wilson says he "joined a company that had been doing work in the inspection field for over 30 years" and that Franklin "only did work for law firms or clients who contacted the company directly."  But, that is not an exception to NRS 645D licensing.  See also defendants' Motion for Summary Judgment (Doc. 53), Exhibit C, Franklin's expert report, printed on letterhead advertising that with a general contractor B2 license Franklin performs "Construction Property Condition Assessments, Environmental & Construction Defects Investigations."  Franklin's B2 general contractors' license actually authorizes him to perform "[t]he construction and remodeling of houses and other structures which support, shelter or enclose persons or animals or other chattels, and which do not extend more than three stories above the ground and one story below the ground."  NAC 624.170(2).

[2]     Defendants' arguments to the contrary, it is not a prerequisite to inadmissibility of Franklin's and Curtis' opinions under Fed.R.Evid. 702 that Del Webb have first deposed them.

[3]     See Wilson Deposition, Motion Exhibit 3, p. 67, ll. 6-15; p. 325, ll. 15-22.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1  Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)), both base the admissibility of expert

2  opinions in Nevada courts on whether the proposed expert's (1) scientific, technical, or other

3  specialized knowledge would assist the trier of fact to understand the evidence or to determine a fact

4  in issue; (2) the expert is qualified by knowledge, skill, experience, training, or education; (3) the

5  testimony is based upon sufficient facts or data; (4) the testimony is the product of reliable principles

6  and methods, meaning they are (a) within a recognized field of expertise, (b) testable and have been

7  tested, (c) published and subjected to peer review, (d) are generally accepted in the scientific

8  community, and (e) based more on particularized facts than assumptions, conjecture, or

9

10  generalization; and (5) the witness has applied the principles and methods reliably to the facts at

11  issue.  This lawsuit is not intended to and cannot result in an omnibus judgment barring Mr. Wilson

12  from ever testifying as an expert in state court proceedings,[4] but is intended to and can result in a

13  judgment holding defendants liable for and permanently barring their illegal home inspection

14  business in Del Webb communities.

15

16         There is no genuine issue of material fact or any law precluding judgment as requested by

17  Del Webb, and partial summary judgment in accord with its motion should now be granted.[5]

18  **II.    Chapter 645D Applies to Home Inspections, Whether or Not Incident to Sales**

19         At PIO Conclusion No. 44, the Court described Chapter 645D's purpose:

20

21         [4]    See e.g. defendants' case, Wright v. Las Vegas Hacienda, Inc., 102 Nev. 261, 262,
22  720 P.2d 696, 697 (1986) (admission of expert testimony is in the trial court's discretion).
        [5]    Defendants argue Rule 56 bars partial summary judgment adjudicating defendants'
23  inspection activities illegal because such a finding would affect just part of Del Webb's claims.
   But, Rule 56(a) not only authorizes summary judgment "on all **or part of the claim**," but
24  subsection (d)(1) specifically directs resolution of material facts not genuinely at issue: "The court
   should … issue an order specifying what facts -- including items of damages or other relief -- are
25  not genuinely at issue. The facts so specified must be treated as established in this action."  Thus,
   defendants' reliance Bonda's Veeoederfabriek, Provimi, B.V. v. Provimi, Inc., 425 F.Supp. 1034
26  (E.D. Wis. 1977), Hawkinson v. Montoya, 2007 WL 776674 (D. Colo. 2007), Testa v. Janssen,
   492 F.Supp. 198 (W.D. Pa. 1980), RePass v. Vreeland, 357 F.2d 801 (3d Cir. 1966), Kendall
27  McGaw Laboratories, Inc. v. Community Memorial Hospital, 125 F.R.D. 420 (D. N.J. 1989),
   Westinghouse Elec. Corp. v. Fidelity & Deposit Co. of Maryland, 63 B.R. 18 (1986), and Coffman
28  v. Federal Laboratories, Inc., 171 F.2d 94 (3d Cir. 1948), fails.  Opposition, p. 25.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1    The Legislative History of NRS Chapter 645D demonstrates the Nevada
2    Legislature's intention that *a contractor's building license would not suffice for inspectors of structures or components of structures*. A contractor's license issued by the Nevada State Contractors Board, such as *a B-2 license, does not*
3    *suffice to support the inspection of structures, components of structures or*
4    *issuance of inspection reports containing an analysis, opinion or conclusion regarding the condition of a structure or component of a structure* under NRS
5    Chapter 645D. Also, a structural inspection license cannot be issued to an entity, only to an individual, according to NRS Chapter 645D.080. [Emphasis added.]
6
7    Defendants do not just ignore the PIO, but also their own documentation of Chapter 645D's

8    legislative history.[6] For example, defendants' Exhibit L, at pp. PAR003549-50, contains a transcript

9    of the 2/24/97 Minutes of the Assembly Committee on Commerce considering *unqualified*

10   *construction defect "experts"* and evidencing Nevada's intent to legislate the profession *beyond*

11   *home inspections incident to resales*:[7]

12
13   Irene Porter, Executive Director, Southern Nevada Home Builders Association, came forward and spoke in favor of the concept of licensing home
14   inspectors. She stated in southern Nevada individuals who had only a business license called themselves home inspectors and inspected existing homes as well
15   as new home construction. Those individuals also offered to do walk-throughs with the new homeowner for a fee. *They presented themselves as experts in*
16   *construction defects.* The association saw a necessity to have licensing, testing, insurance and other standards for individuals in the home inspection field.
17   She stated *the State Contractors Board looked at A.B. 165 and the entire*

18   _____
19       [6]     Since NRS Chapter 645D is unambiguous as to its applicability to defendants, there is really no need to inspect its legislative history, except to give further weight to Del Webb's position. See defendants' case, County of Clark v. Upchurch, 114 Nev. 749, 754, 961 P.2d 754,
20   758 (1998), holding that the legislative history is only to be inspected if statutes are ambiguous. Defendants cite no ambiguity in NRS 645D. Hence, defendants' case, United States v. X-
21   Citement Video, Inc., 513 U.S. 64 (1994), finding ambiguity as to what part or parts of statute required knowledge, is inapplicable.

22       [7]     By contrast, California regulates home inspections incident to transfers. Defendants repeatedly rely on California law (perhaps because their principal support comes from the Angius &
23   Terry law firm, which originates in Sacramento). Defendants' Exhibit K, at PAR003529, recites California Code of Business and Professions § 7195 which, at subsection (a) supplies the foundation
24   of many of defendants' arguments in this case, as follows:

25       (a)     'Home inspection' is a *noninvasive*, physical examination, *performed for a fee in connection with a transfer*, as defined in subdivision (e)
26   of real property, of mechanical, electrical, or plumbing systems or the structural and essential components of a residential dwelling of one to four units designed
27   to identify material defects in those systems, structures and components. ....

28   Nevada's legislature, however, "went beyond the resale industry" and NRS 645D contains no limitation to transfers or performance for collection of a fee.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

*issue of home inspection as it went beyond the resale industry*.  She also
mentioned that Clark County's Building Department required all their inspectors
become certified by the International Conference of Building Officials (ICBO).
There were a lot of fine people who had been in the field for many years.
Because it was a totally unregulated field, unqualified individuals performed
tasks which they may not have the skills to perform.  There were no questions for
Ms. Porter.  [Emphasis added.]

See also Exhibit L, at p. PAR003659, containing parts of the 5/1/97 Minutes of the Nevada

Assembly Committee on Ways and Means at which Assemblyman Dini *unsuccessfully* raised

precisely defendants' current arguments:

> Mr. Dini remarked this bill had been introduced in the last couple of
> sessions and *he did not feel inspectors should be certified*.  This would just add
> another layer of cost to the person doing the inspections.  *Most of these inspectors
> were old construction workers who knew the business and worked part time*.
> Chairman Arberry asked the committee to move on the next bill.
> [Emphasis added.]

Nevada's Legislature rejected Mr. Dini's position and NRS Chapter 645D became law in 1997.

Neither Chapter 645D nor its legislative history makes any of the distinctions defendants

urge -- which is that NRS 645D applies only to inspections related to sales and for a fee while

exempting searches for code violations.[8]  Moreover, nothing in NRS Chapter 624 (governing

---

[8]     Defendants have made no showing that code issue inspections are the exclusive
domain of Nevada B-2 general contractor licensees.  Home inspection licensees are not barred
from inspecting from code violations.  The various publications defendants present in their Exhibit
K caution against the difficulty of determining what is a code violation.  Thus, defendants'
authority, *Inspecting a House* (Exhibit K), at p. PAR003518, warns against finding "something is
a code violation unless you are certified in that field."  Another of defendant's authorities,
*Uniform Home Inspector's Code Book* (Exhibit K, at p. PAR003526) similarly warns against
discussing code violations because (1) they change frequently, (2) there are a "plethora" of them;
(3) there are so many codes that "[n]obody could keep them all straight"); (4) department's chief
building officers are free to modify any code; and (5) current codes are moving from prescriptive
to performance based models.  Another of defendants' authorities, Russell Burgess' *Real Estate
Home Inspection: Mastering the Profession*, at pp. PAR 003527 and 003539, also warns against
finding code violations because of the difficulty of ascertaining which codes apply and wisely
advises its readers to "[k]now whether your state has any laws connected with the home inspection
process."  Although these authorities do not discuss Nevada law or support their arguments,
defendants request the Court take "judicial notice" of them.  Opposition, p. 18, ll. 21-22.

Furthermore, code violations are not the sole basis for Chapter 40 claims and defendants
did not solicit code violation investigations.  See e.g. Defendants' Exhibit M, an 11/7/07 report
prepared for Sun City Anthem residents stating in its first sentence that it is a "preliminary
*constructional defect* report," and continuing: "This evaluation identifies the areas of concerns

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1    contractor's licenses) authorizes general contractor licensees to conduct or communicate residential

2    structural inspections.  In sum, NRS 645D is Nevada's statutory scheme addressing persons, such as

3    defendants, who conduct inspections of the structures and their components, and it requires licensing

4    in accord with its training, financial responsibility and personal integrity requirements. [9]

### III.    Experts Cannot Adjudicate Chapter 645D's Meaning or Applicability

7        Defendants say Curtis and Franklin have "presented undisputed evidence that a license under

8    NRS 645D was not required" for their business.  Opposition, p. 6, ll. 19-21.  However, Fed.R.Evid.

9    702 bars expert opinions as to the meaning or applicability of domestic law.  See Shuffle Master,

10   Inc. v. MP Games LLC, 553 F.Supp.2d 1202, 1208-09 (D. Nev. 2008) (expert testimony as to the

11   meaning of the law is inadmissible under Rule 702); In re: IPO Litigation, 174 F.Supp.2d 61, 65, 69

12   (S.D. N.Y. 2001) ("there is no such thing as an expert opinion when it comes to interpreting a statute

---

14   pertaining to the **constructional defects** and/or product manufacturer's recommendations
     discrepancies.... Our report includes the following; the locations of the infractions, **defects** and/or
15   damages.... This report may...be used to illustrate certain **constructional deficiencies** and/or
     discrepancies...." [Emphasis added.]

16       [9]   Defendants' documentation of Chapter 645D's legislative history (Opposition Exhibit
17   L) proves Nevada's intent to bar from the home inspection business persons with a criminal past,
     such as Mr. Wilson (see also Del Webb's motion, fn. 9 and Exhibit 39). See e.g., defendants' Exhibit
18   L, at PAR003547, 2/24/97 Assembly Committee on Commerce Minutes ("Mr. Anderson stated the
     test of good moral character would deal with a criminal history record"); and at PAR003618, 3/17/97
19   Assembly Committee on Commerce Minutes:

20           Mr. Close expressed his concern and stated it would be in the
             consumer's best interest to have a background check completed so as to know
21           if the applicant was all right.  Considering it was the first time home inspectors
             were required to be certified and because those who were involved in the
22           inspection service had agreed to the amendments, it was best to keep them as
             read.  Mr. Close explained the certification process should be monitored to
23           make sure individuals with criminal backgrounds did not 'slip through the
             cracks.'

24           Mr. Herrera stressed the submitting of fingerprints along with the
             possibility of a complete background check performed by the FBI served as a
25           strong deterrent.

             Chairman Perkins agreed with Mr. Close as to the need to keep an eye
26           on the certification process. ....

27   Defendants' touting of Mr. Wilson's construction experience is belied by both his admission of a
     criminal past related to workers' compensation insurance fraud connected with his California roofing
28   business, his loss of California privileged licenses as a result, and the fact he never applied for any

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1   unless that opinion belongs to a court"), *citing* <u>Montgomery v. Aetna Cas. & Sur. Co.</u>, 898 F.2d

2   1537, 1541 (11th Cir. 1990) ("A witness may not testify to the legal implications of conduct; the

3   court must be the jury's only source of law"); <u>Lawrence v. The Richman Group of Connecticut</u>, 407

4   F.Supp.2d 385, 391, fn. 9 (D. Ct. 2005) ("[a]s a general rule an expert's testimony on issues of law is

5   inadmissible"), *citing* <u>Marx & Co., Inc. v. Diners' Club, Inc.</u>, 550 F.2d 505, 508-11 (2d Cir. 1977)

6   ("we must be especially careful not to allow trials... to become battles of paid advocates posing as

7   experts on the respective sides concerning matters of domestic law"); <u>Burkhart v. Washington</u>

8   <u>Metro. Area. Trans. Auth.</u>, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped

9   with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the

10  relevant legal standards"); and <u>Weston v. Washington Metro. Area. Trans. Auth.</u>, 78 F.3d 682, 684,

11  fn. 4 (D.C. Cir. 1996) ("An expert witness may not deliver legal conclusions on domestic law....."),

## IV.   Defendants' Illegal Business Activities Should Be Permanently Enjoined

Although Mr. Wilson concedes violating the PIO, defendants argue they cannot be

permanently enjoined because Del Webb did not first file a motion for order to show cause.

Defendants cite no authority for this proposition and, a permanent injunction may be granted

absent prior show cause proceedings.[10] Defendants also confuse mandatory injunctions (barring or

directing actions) and prohibitory injunctions (preserving the *status quo*). Del Webb did not

request and the Court did not enter a PIO preserving defendants' illegal inspection activities in Del

Webb communities; instead, the Court barred them by mandatory injunction.[11]

---

privileged license in Nevada.  Wilson Deposition, Motion Exhibit 3, p. 237, ll. 3-5; p. 299, ll. 10-15.

[10]     Defendants' case, <u>U.S. v. Robinson</u>, 449 F.2d 925 (9th Cir. 1971), merely resolves that sufficient notice was given of an order to show cause. Del Webb's motion for summary judgment was filed February 17, 2009, giving defendants plenty of opportunity for opposition. Moreover, proof of violation of a preliminary injunction is not a prerequisite to permanent injunctive relief and Wilson and other MCMC employees have clearly conceded their violations of the PIO and defendants' post-PIO inspection reports for Sun City Anthem appear in the record. Motion Exhibits 5 and 6.

[11]     Defendants' case, <u>Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler</u>, 305 F.Supp.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1    Wilson clearly concedes he continued his unlicensed inspection business in Sun City

2    Anthem after entry of the PIO. <u>See</u> Motion Exhibits 5 and 6 (10/22 and 12/15/08 inspection

3    reports for Sun City Anthem); Diaz Depo., Motion Exhibit 2, p. 64, l. 11-15 (he performed the

4    inspection for the 10/22/08 report); Wilson Depo., Motion Exhibit 3, p. 339, l. 21 - p. 340, l. 23

5    (inspections continued in Sun City Anthem after the 10/22 and 12/15/08 reports).  Wilson argues

6    that despite the PIO, his lawyers told him he could continue his work in Sun City Anthem by

7    acting as their expert. <u>Id.</u>. p. 341, l. 10 - p. 343, l. 11 (""Mr. Pollock ... felt that... the court

8    order... was only for work that I would generate, not for working for him as an expert.  That if he

9    hired me as an expert, I can go and do the work") and ("I got indication from Angius & Terry that

10    continuing on the projects that they already had and I was their expert").  Wilson's March 20,

11    2009, Affidavit (Opposition Exhibit N, ¶3), repeats this position: " I ... was under the impression

12    by our legal council [sic] ... that the order was not to solicit or perform residential inspection by

13    any illegal, unlicensed means."  But, the PIO is clear -- NRS 645D licensing is required to perform

14    residential inspections and directs defendants "and their affiliates and others acting in concert with

15    Defendants" to stop "soliciting and/or performing residential inspections and/or providing

16    inspection reports in Sun City Anthem, or any other Del Webb Nevada developments, by means of

17    illegal, unlicensed and false practices...."[12] PIO (Doc. 34), p. 19, l. 21 - p. 20, l. 1.

18    Defendants also argue enforcement of Chapter 645D by permanent injunction would be

19    unconstitutional.  None of their authorities, however, bar enforcement of professional licensing

---

1210 (D. Cal. 1969), denies a mandatory preliminary injunction (seeking to bar defendants' use of an allegedly infringing service mark) for lack of sufficient proof of success on the merits.  Del Webb provided such proof and the Court entered its mandatory PIO. See <u>Malo, Inc. v. Alta Mere Industries, Inc.</u>, 2007 WL 1703454, *2 (D. Nev. 2007), granting a mandatory injunction: "While a prohibitory injunction preserves the *status quo* [citation omitted], a mandatory injunction goes well beyond simply maintaining the *status quo*...."  and is reserved for situations where "extreme or very serious damage will result...."

[12]    Although defendants argue that Franklin and Pollock can direct further inspections in Del Webb properties because they are not bound by the PIO, Mr. Pollock is counsel of record for

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

8

1   laws.[13]  NRS Chapter 645D is presumed constitutional and a challenger must prove it

2   unconstitutional beyond reasonable doubt. <u>Martinez v. Maruszczak,</u> __ Nev. __, 168 P.3d 720,

3   730 (2007) ("this court presumes that the statute is valid; in order to overcome that presumption,

4   the estate must make a 'clear showing' regarding the statute's invalidity").

5       Violation of a professional licensing statutes is properly barred by injunction. <u>Gebbie v.</u>

6   <u>Olson,</u> 828 P.2d 1170, 1172 (Wash. App. 1992) ("There is no constitutional right to practice

7   prosthetic dentistry without a license nor is there a constitutional right for patients to obtain

8   prosthetic dental services from unlicensed persons"); <u>id.,</u> at 1173 ("engaging in any business or

9

10  profession in defiance of the law is a nuisance *per se* and subject to injunction"); <u>Marsland v.</u>

11  <u>Pang,</u> 701 P.2d 175, 187 (Haw. 1986) ("Appropriate circumstances to justify injunctions .. exist in

12  the field of professional or occupational licensing statutes.  [T]he statutory requirements are the

13  legislative expressions of the public policy of the state and the operation of such a profession or

14

15  occupation without a license is *per se* irreparable injury to that expressed public policy"); and

16  <u>Heib v. Arches Financial,</u> 2008 WL 4601602, *4-5 (E.D. Wash. 2008) (enjoining law offices'

17  unlicensed debt collecting business since it was a *per se* violation of law and "unless enjoined will

18  continue to harm the public interest by causing Plaintiffs and other similarly situated to pay

19

20  _____

defendants in this case and Mr. Franklin is one of defendants' experts.  Opposition, p. 7, ll. 21-23.

21      [13]    See *e.g.* defendants' cases, <u>Alexander v. United States,</u> 509 U.S. 544 (1993)
(forfeiture of assets used in furtherance of activities prohibited by RICO, involving predicate acts

22  of distribution of obscene materials, was not an impermissible prior restraint); <u>Carroll v. President</u>
<u>and Commissioners of Princess Anne,</u> 395 U.S. 175 (1968) (a 10-day ex parte injunction barring

23  white supremacist political rallies violated the First Amendment); <u>Organization for a Better Austin</u>
<u>v. Keefe,</u> 402 U.S. 415 (1971) (distribution of leaflets critical of alleged "blockbusting" was

24  protected by the First Amendment); <u>Bantam Books, Inc. v. Sullivan,</u> 372 U.S. 58 (1963) (informal
censorship of books by Rhode Island Commission to Encourage Morality in Youth was

25  unconstitutional); <u>Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio,</u> 471
U.S. 626, 638 (1985) (attorney could not be disciplined for commercial speech that was not false

26  or deceptive and did not concern unlawful activities); <u>Bolger v. Youngs Drug Products Corp.,</u> 463
U.S. 60 (1983) (statute prohibiting mailings promoting contraceptive devices was unconstitutional

27  because it did not concern any unlawful activity and was not misleading); <u>Western States Med.</u>
<u>Center v. Shalala,</u> 238 F.3d 1090 (9th Cir. 2001) (statute prohibiting advertising of compound

28  medicines was unconstitutional because it was not misleading or related to unlawful activity).

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

collection charges that are unfair[,] deceptive, unlawful and an unfair method of competition").

A permanent injunction is necessary given defendants' deliberate and repeated disregard of Nevada law and the PIO.  No equities support defendants' actions and permanent injunctive relief is required to protect both Del Webb and the public against defendants' continued illegal business. See POM Wonderful LLC v. Purely Juice, Inc., 2008 WL 4222045, *16 (C.D. Cal. 2008),; Kennedy Industries, Inc. v. Aparo, 416 F.Supp.2d 311, 317 (E.D. Pa. 2005); Resource Lenders, Inc. v. Source Solutions, Inc., 404 F.Supp.2d 1232, 1249, 1250 (E.D. Cal. 2005); and Church & Dwight Co., Inc. v. S.C. Johnson & Son, Inc., 873 F.Supp. 893, 912 (D. N.J. 1994), all discussed in Del Webb's motion, p. 27, ll. 1-11.

Defendants' misleading solicitations also fall within the prohibition of champerty and maintenance and are properly halted by injunctive relief.  Westmoreland County v. Rogers. 693 A.2d 996 (Pa. Cmwlth. 1997) (enjoining consultant engaged in champerty and unauthorized practice of law from further soliciting of taxpayers to allow him to pursue tax appeals on their behalf but for his benefit); and Green v. Wyrick, 428 F.Supp. 732 (D. C. Mo. 1976) (enjoining inmate "jailhouse lawyer" from filing future writs on behalf of inmates in order to secure his occasional releases from prison).

## V.     Defendants Have Violated Nevada Law Banning Champerty and Maintenance

Defendants say they did not violate Nevada's bar against champerty and maintenance because not each of the 900 homeowners they contacted in Sun City Anthem made an NRS Chapter 40 claim against Del Webb and because Nevada no longer recognizes a medieval ban against fomenting litigation.  However, a claim based on champerty and maintenance is unconcerned with the *number* of claims fomented, but with their *wrongful* fomentation by one without an interest in the matter.  Moreover, Mr. Wilson's March 20, 2009, Affidavit (Opposition Exhibit N) is far too modest about his solicitation success rate (550 claims out of 900 inspections).  Mr. Wilson says:

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

2.      My personal recollection is that MC Mojave inspected approximately 900 homes in the Sun City Anthem Community of 7,000 plus homes, and provided inspection reports to the homeowners. …. From my personal recollection, and from review of my Aging Sheet, …. approximately 550 of those residents provided NRS Chapter 40 notices to the Plaintiff or less than 8% of the community.

However, Mr. Wilson's success is actually 61% (not 550 construction defect claimants out of a total of 7,000 Sun City Anthem homeowners (for 7.85%), but 550 construction defect claimants out of 900 homeowners solicited).[14]

Nothing in Nevada law suggests that the common law prohibition against champerty and maintenance no longer exists.[15]  No lawyers are parties to this suit and legal ethics rules do not bind defendants (although they apparently also give legal advice to homeowners).  NRS 1.030, enacted in 1911, adopted "the common law of England, so far as it is not repugnant to or in conflict with the Constitution and the laws of the United States, or the constitution and laws of this state…."  The editor's notes to the statute state that the common law rule against champerty and maintenance was included, which observation is confirmed by three centuries of Nevada law, *i.e.*, Gruber v. Baker, 20 Nev. 463, 23 P. 858, 862 (1890) ("The reason of … champerty and maintenance … is to prevent litigation and the prosecution of doubtful claims by strangers to them"); Prosky v. Clark, 32 Nev. 441, 109 P. 793 (1910); Dixon v. Pruett, 42 Nev. 345, 177 P. 11 (1919); Aeroville Corp. v. Lincoln County Power Dist. No. 1, 71 Nev. 320, 290 P.2d 970 (1955); Lum v. Stinnett, 87 Nev. 402, 408, 488 P.2d 347, 350 (1971) ("Maintenance exists when a person

---

[14]      Mr. Wilson views the remaining 6,100 homeowners in Sun City as potential prey, yielding at his prior success rate, 4,760 customer/claimants and millions of dollars in income as a result of defendants' illegal "free" inspections.  See Opposition, p. 7, ll. 18-19, boasting that at their "peak," defendants were doing dozens of home inspections in Sun City Anthem a month.

[15]      Defendants' motion for summary judgment (incorporated by reference in its opposition) demands dismissal of Del Webb's champerty and maintenance claims based on the opinions of California attorney, Robert Kehr, who claims expertise in the law of lawyer ethics. Defendants' Motion Exhibit B.  Mr. Kehr's opinions and conclusions as to Nevada law, however, are inadmissible under Rule 702 for the reasons discussed *supra*.  Moreover, Mr. Kehr's opinion that the prohibition against champerty and maintenance no longer exists in Nevada, is simply wrong.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

without interest in a suit officiously intermeddles therein by assisting either party with money or otherwise to prosecute or defend it. .... Champerty is maintenance with the additional feature of an agreement for the payment of compensation or personal profit from the subject matter of the suit. .... "To maintain the suit of another is now, and always has been, held to be unlawful, unless the person maintaining has some interest in the subject of the suit, or unless he is connected with the assignor by ties of consanguinity or affinity"); Molezzo Reporters v. Patt, 94 Nev. 540, 579 P.2d 1243 (1978); In re MGM Grand Hotel Fire Litigation, 570 F.Supp. 913, 935 (D. Nev. 1983) (no champerty since there was "no officious intermeddling or lack of interest" in the parties' various lawsuits); Vosburg Equipment v. Zupanic, 103 Nev. 266, 268, 737 P.2d 522, 523 (1987) ("In 1890 this court held that even in the absence of statute it was, under the common law of England, unlawful 'to maintain the suit of another' unless the person maintaining the suit 'has some interest in the subject of the suit'"); Schwartz. v. Eliopulos, 113 Nev. 586, 589-90, 939 P.2d 1034, 1036 (1997) ("A champertous agreement is one in which a person without interest in another's litigation undertakes to carry on the litigation at his own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation"); Davis v. Westgate Planet Hollywood Las Vegas, LLC, 2009 WL 102735, *12 (D. Nev. 2009) (champerty and maintenance bars counsel barred from soliciting putative class members); Felicia Galati, Assistant Bar Counsel, "Getting Involved in Getting Money for Your Civil Litigation Clients: An Ethical Quagmire," (Nevada State Bar, 11/1/06):

> Before reviewing the various ethical opinions in this area, it is useful to review the impetus for the Rule. The concerns addressed by this Rule arise out of the law of maintenance, champerty and barratry. 'Maintenance is defined as 'an officious intermeddling in a lawsuit by a non-party by maintaining, supporting or assisting either party, with money or otherwise, to prosecute or defend the litigation.' Champerty is only one form of maintenance which is defined as 'a bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving a part of any judgment proceeds.' Barratry is defined as 'frequently exciting and stirring up quarrels and suits, either at law or otherwise.' All three were common law offenses and grounds for

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

12

discipline.  Such conduct was said to have a 'tendency to encourage unwanted and unmeritorious litigation, inflated damages, suppressed evidence, and suborned perjury.'

In accord with this Nevada, law, the PIO (Conclusion No. 57) states:

> Maintenance is the supporting or promoting of the litigation of another. Champerty is a bargain to divide the proceeds of litigation between the owner of the litigated claim and the party supporting the litigation. 7 *Williston on Contracts* § 15:1 (4th ed.); Schwartz v. Eliades, 113 Nev. 586, 589, 939 P.2d 1034, 1036 (1997), *citing* Lum v. Stinnett, 87 Nev. 402, 407-408, 488 P.2d 347, 350 (1971). Defendants' misleading solicitations and agreements fall within the prohibition of champerty and maintenance and have harmed and continue to threaten to harm Del Webb.  Linn v. Stinnett, 87 Nev. 402, 407, 488 P.2d 347, 350 (1971).

Defendants should now be held liable for violation of Nevada law prohibiting champerty and maintenance.

## VI.   Defendants Are Liable under Nevada's Deceptive Trade Practices Act

According to defendants, Del Webb's claim for violation of Deceptive Trade Practices Act can be resolved by answering "only one question: was a licensed [sic] required under NRS 645D.080 for the inspection activities of MOJAVE." Opposition, p. 27, ll. 1-3.  Del Webb has fully addressed this question and the PIO agrees with Del Webb's position.  Defendants concede they have conducted and continue to conduct their inspection business in Del Webb communities without Chapter 645D licensing.  Defendants' argument constitutes consent to entry of final summary judgment for Del Webb on its claim for violation of Nevada's deceptive trade practices laws and such judgment should now be entered.

## VII.   Defendants Are Liable for Violation of the Lanham Act

Defendants argue Del Webb cannot recover under the Lanham Act because there has been no demonstration that they acted in interstate commerce or that their statements were false.  They are wrong as to both issues.

It is unquestionable that defendants acted in interstate commerce.  Defendants testified as to the efficacy of their fliers and placards in prompting homeowner telephone calls for service.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

13

Partington Depo., Exhibit 8, p. 55, l. 18 - p. 56, l. 9 (the inspection division gets its business through phone calls in response to fliers, but the PIO barring use of the fliers stopped the phone calls: "Well, we had fliers out there but you made us stop putting them out. There's no more phone calls.").[16]  Mr. Wilson confirmed defendants' use of an internet website promoting their business, testifying he created MCMC's website, advertising a "Construction and Inspection Divisions," thus falsely claiming MCMC was licensed to inspect.  Motion Exhibit 9; Wilson Deposition, Motion Exhibit 3, p. 233, l. 9 - p. 235, l. 9.  The website also urged homeowners to call Wilson's phone for a "free home evaluation…."  Id.  Wilson also conceded the webpage falsely advertised non-existent Arizona and California branches.  Id. p. 235, ll. 10-15.  Defendants' communications with lawyers about homeowners were made by email. Id., p. 232, l. 17 - p. 233, l. 2.  Defendants' inspection reports were prepared over the internet, i.e., integrating photos into a form on their computers.  Id., p. 71, l. 1 - p. 72, l. 12; p. 285, l. 18 - p. 286, l. 1 (reports prepared by email and then merger on computer); Farruggia Depo., Motion Exhibit 4, p. 81, ll. 4-18.

Use of the telephones, cell phones, and of the internet constitute use of interstate communications.  Healthport Corp. v. Tanita Corp. of America, 563 F.Supp.2d 1169, 1180-81 (D. Or. 2008) (an internet website is an avenue of interstate commerce under the Lanham Act: "by posting the… advertisements on their web sites, Healthport caused the false statements to enter interstate commerce"); Gallup, Inc. v. Business Research Bureau, Ltd., 2008 WL 4857027, *5 (N.D. Cal. 2008), citing United States v. Sutcliffe, 505 F.3d 944, 953 (9th Cir. 2007) ("The internet is 'an instrumentality and channel of interstate commerce'"); and United States v. Mitra, 405 F.3d

---

[16]     See also defendants answer to Interrogatory No. 6, Motion Exhibit 10, p. 5, describing how contacts were made with homeowners:  "Most of the clients called our office or talked to one of our employees in the field after hearing about our services form one of the neighbors or friends in the community.  A minor portion of them called the company when they received a flyer on their doors about our services.  A few called the business because the placard announced a quote un quote builder's inspections.  …."

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

492, 496 (7th Cir. 2005) (cell phone calls are all a part of interstate commerce "because the electromagnetic spectrum is securely within the federal regulatory domain").

The literal falsity of defendants' solicitations is also unquestionable. Falsity under the Lanham Act includes statements that are literally false, either facially or by necessary implication, or statements that are literally true, but likely to mislead or confuse. When a solicitation is literally false, as for example defendants' solicitation of a "free" inspection which is actually paid by the homeowner, a court need not inquire whether customers were actually misled: "A plaintiff is entitled to relief under the Lanham Act on proof of *literal falsity alone*, as it will be assumed that false statements actually mislead consumers."[17] Defendants' case, <u>Mutual Pharmaceutical Co. v. Ivax Pharmaceuticals, Inc.</u>, 459 F.Supp.2d 925, 933 (C.D. Cal. 2006), confirms this point:

> 'Where the advertisement is literally false, a violation may be established *without evidence of consumer deception*.' *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002). 'If the advertising claim is literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public.' *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997). [Emphasis added.]

Defendants claim there is nothing false about their placard and that it was distributed simply to warn people about inspections, but it is false, advertising among other things a "FREE" home inspection where such inspections are not "free" to homeowners but either paid from the homeowners' recoveries through the Chapter 40 process or outright due from homeowners as where

---

[17]   In 1971, the FTC adopted 16 C.F.R. § 251.1 (1998), "Guide Concerning Use of the Word 'Free' and Similar Representations" ("Free Guidelines"), which states:

> When making 'Free' or similar offers all the terms, conditions and obligations upon which receipt and retention of the 'Free' item are contingent should be set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood. Stated differently, all of the terms, conditions and obligations should appear in close conjunction with the offer of 'Free' merchandise or service. For example, disclosure of the terms of the offer set forth in a footnote of an advertisement to which reference is made by an asterisk or other symbol placed next to the offer, is not regarded as making disclosure at the outset.

Defendants didn't even bother with a footnote, but persist in their misrepresentation of their services as "FREE."

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1   they might withdraw from the Chapter 40 process.  Defendants ignore the written agreements they

2   obtained from homeowners requiring payment out of homeowner recoveries or homeowners'

3   pockets if they withdraw from the Chapter 40 process.  The fact that homeowners did not even

4   understand that the Angius & Terry fee agreement defendants presented them to sign actually

5   required that homeowners pay expenses upon termination of legal representation proves defendants'

6   deception.  Kalish Depo., Exhibit 18, p. 31, l. 24 - p.32, l. 2; sample homeowner agreement, Exhibit

7   6.[18]  For example, the letter that defendants had homeowners sign called for contingent attorneys

8   fees and reimbursement of all litigation expenses: "Client shall reimburse Attorney for all litigation

9   expense so advanced plus ten percent (10%) interest out of Client's share of the recovery."  Motion

10  Exhibit 19 (sample attorney contingency fee agreement).  "Recovery" was defined by that letter as

11  "the total amount obtained from any source and by any means…."  Id.  And, if a homeowner

12  terminated representation at any time, then he was responsible for payment.  Defendants' Chapter 40

13  Inspections and Evaluation Agreement with Sun City Anthem homeowners also included an

14  assignment in favor of defendants:  ***"Homeowner assigns to MCMC the right to recover any and all***

15  ***inspection fees from the builder if the builder fails to pay all the inspection fees as outlined in***

16  ***NRS 60.645***.  [Emphasis added.]  Complaint Exhibit 2; Answer (Doc. 7) ¶20; PIO (Doc. 34), ¶17;

17  Exhibit 6 (homeowner agreement).  The fact that certain homeowners did not understand that

18  payment for the inspections was always to be paid from their money and not literally "FREE" to

---

[18]     Defendants argue Del Webb is judicially estopped to rely on various homeowner depositions because it sought the Court's relief in accord with Fed.R.Civ.P. 31((a)(2)(A)(i) limiting defendants from taking 60 or more such depositions.  However, the depositions Del Webb quotes were not barred so there is no estoppel.  Moreover, judicial estoppel applies to factual positions, not procedural ones.  See defendants' case, Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 600 (9th Cir. 1996) (judicial estoppel precludes a party from gaining an advantage by taking one position and then an incompatible one, *i.e.* where Rissetto obtained workers' compensation based on her assertion that she could not work she was later judicially estopped from pursuing claims based on her ability to work); and First Nat'l Ins. Co. v. Fed. Deposit Ins. Co., 977 F.Supp. 1051, 1058 (S.D. Cal. 1997) ("judicial estoppel precludes a party from taking inconsistent factual positions, but does not preclude parties from arguing different

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1  them does not make it otherwise.[19]  See Opposition, at p. 11, ll. 13-27, citing depositions of

2  homeowners' whose misunderstanding merely proves the efficacy of defendants' deceptions.

3          Contrary to defendants assertion that there is no evidence any homeowner was ever told he

4  or she would have to pay defendants' inspection fees (Opposition, p. 17, ll. 21-27), Mr. Miller

5  testified that when he tried to end his Chapter 40 process, defendants told him he had to complete

6  the process or would be liable for their fee. B. Miller Depo., Exhibit 25, p. 46, ll. 9-18; see also B.

7  Miller's Declaration, Exhibit 26, at ¶¶ 9-11, explaining:

8

9          9.      We eventually found out that the purpose of Chapter 40 was to get
        work done if Del Webb was not doing anything.  For us, Del Webb had been great.
10      They did anything that we needed done.
        10.     I called Mojave to withdraw from the Chapter 40 and the individual
11      I spoke with said we were bound to go through the Chapter 40 process and if we
        backed out, we would have to pay their fee.  They said that they did all this work
12      and we'd have to pay their fee.
        11.     We then called Angius & Terry and they let us withdraw because
13      we told them Mojave had misrepresented what the Chapter 40 process was and
        what they were signing us up for.
14

15  Another homeowner, Anita Rosen confirms Mr. Miller's testimony:

16
        A       [T]he people I know who did not have an attorney had Pulte -- Pulte
17      did everything to fix the house.  So I wanted to opt out of my attorney deal, and
        they want $500 for me to leave, which is ridiculous.  They claimed I signed the
18      contract that states that.  Next time I should read what I sign, I guess.  Good idea.
                                    * * *
19      Q       Who told you that?
20      A       Angius & Terry.  I don't know the person there that told me that.
        Q.      They told you that your contract says you would have to pay $500
21  to opt out?
        A       Uh-huh.
22

23  Rosen Deposition, Exhibit 27, p. 13, l. 18 - p. 19, l. 7.  When asked if she was aware Angius &

24  _____

25  legal opinions or conclusions from one set of facts").
        [19]     Mr. Wilson also explained that homeowners who did not proceed with the Chapter
26  40 process did not receive the same "FREE" inspection report as those who did -- they got only a
    much shorter version  In addition, homeowners who went with Mr. Pollock's firm, did not
27  themselves receive any report at all, free or otherwise -- it all went directly to the law firm.
    Wilson Depo., Motion Exhibit 3, p. 68, l. 14 - p. 69, l. 3; p. 88, l. 9 - p. 89, l. 25; Exhibit 48,
28  5/25/07 Wilson email ("MCMC does not send copies to homeowners when they are signed up
    with Pollock").

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

Terry had paid Mojave $500 when they referred her as a claimant, Ms. Rosen responded: "Oh my goodness. I guess the answer is no, but now I feel as though I was taken. …. You can't trust anybody." Id., p. 17, ll. 9-16.

The materiality of defendants' misrepresentations is clear. See POM, supra, 2008 WL 4222045, *11 ("A plaintiff may establish this materiality requirement by proving that the defendants misrepresented an inherent quality or characteristic of the product"). In addition to misrepresenting the cost of their services to homeowners, defendants also misrepresented their legal authority to conduct inspections and an affiliation with Del Webb. At her March 6, 2009, deposition, homeowner Rosalind Flans testified it was her impression "the whole time" that defendants and Pulte "were working together…." R. Flans Depo., Exhibit 22, p. 65, ll. 7-21 (the placard would "reinforce that idea).[20] Such misrepresentations went to the very heart of defendants' business, intended to mislead consumers as to the skill, authority and state supervision of defendants' work and its cost, qualities to which homeowners would naturally attach great importance.

Defendants' misrepresentations were material and both literally false and intentionally so. Defendants represented themselves to the public, including Sun City Anthem homeowners, as licensed by Nevada law to conduct inspections and make inspection reports.[21] Mr. Wilson knew defendants had no inspection license under NRS 645D yet ran the "inspection division" without any oversight but his own. Defendants' action intentionally misled the public and their message reached Del Webb residents, disrupting Del Webb's home warranty servicing program and

---

[20]    Defendants' argument that homeowner deponents believed MCMC to be an independent company from Del Webb does not refute the point. Defendants questioned homeowner deponents as to whether anyone from MCMC represented they were employed by or acting on behalf of Del Webb or Pulte. Lawrence Cole Depo., Motion Exhibit 13, p. 17, ll. 9-17. Defendants, however, implied they were working with Del Webb and that implication is not addressed by the questions defendants posed to deponents. M. Hendrickson Deposition, Motion Exhibit 16, p. 35, ll. 5-8 ("They told me they were working with Del Webb….").

[21]    See i.e. Deposition of Lawrence Cole, Motion Exhibit 13, p. 37, ll. 20-23 ("They told me a general contractor could do the inspection"); and Deposition of Mary McCullough, Motion Exhibit 14, p. 28, ll. 8-17 (defendants represented they were licensed to do the inspection).

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1   warranties.  See e.g. defendants' Exhibit I, the deposition transcript of Irene Jones, who defendants

2   say didn't care whether they were licensed.  In fact, Mrs. Jones testified that would not have

3   permitted defendants to inspect her home had she known otherwise: "We assumed they were,

4   coming from a construction company, you know.  I guess we're just gullible homeowners."

5   Exhibit I, p. 43, l. 15 - p. 44, l. 1.  See also Gene Kalish Deposition, Motion Exhibit 15, p. 29, ll.

6   9-24 (Wilson represented defendants' experience and background as qualified to do inspection).

7   The presumption applies and the Court should now hold defendants liable under the Lanham Act.

8

9        There is no genuine issue of material fact as to defendants' violation of the Lanham Act

10  and the Court should now resolve liability against defendants by summary judgment and enjoin

11  further violations by permanent injunction.  Earthquake Sound Corp. v. Bumper Industries, Inc.,

12  1999 WL 638681 (9th Cir. 1999).

13  **XII.   Conclusion**

14

15       Defendants argue that NRS 645D licensing is the "linchpin" of Del Webb's motion and to

16  the extent no NRS 645D license is required for their activities, Del Webb is entitled to no relief.

17  The opposite is also true -- to the extent NRS 645D licensing is required for defendants' activites,

18  Del Webb is entitled to relief as requested by its motion for partial summary judgment.  No

19  ambiguity or questions of fact cloud issues to be determined or preclude summary judgment as

20  requested by Del Webb -- defendants had no Chapter 645D license yet solicited inspections

21  through deliberate deceptions, and then conducted inspections and communicated inspection

22  reports used to commence Chapter 40 claims.[22]  As the PIO has determined, NRS 645D licensing

23

24

---

[22]     See defendants' cases Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89
(1990) ("the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to
a specific fact essential to the other side's case to demand at least one sworn averment of that fact
before the lengthy process of litigation continues"); Soremekun v. Thrifty Payless, Inc., 409 F.3d
978, 984 (9th Cir. 2007) (non-moving party must come forth with specific facts showing a genuine
issue of material fact); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (to defeat
summary judgment, dispute facts must be material to case's resolution).  There is no contest to the
facts establishing defendants' illegal conduct other than bare allegations and argument that their

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

19

1   is required for these inspection activities and, as a result, Del Webb is entitled to summary

2   judgment determining that as a matter of law defendants (1) violated NRS Chapter 645D, (2)

3   violated the Court's PIO; (3) violated the Lanham Act; (4) violated the Nevada Deceptive Trade

4   Practices Act; (6) violated Nevada's prohibitions against champerty and maintenance; (7) must be

5   permanently enjoined from conducting inspections and communicating inspection reports in any

6   Nevada Del Webb community; and (8) are liable for Del Webb's fees and costs.

7

8                                                    LIONEL SAWYER & COLLINS

9                                               By_____
                                                    Todd M. Touton, Esq.
10                                                  1700 Bank of America Plaza
                                                    300 South Fourth St.
11                                                  Las Vegas, Nevada 89101

12                                                  Attorneys for Plaintiff, Del Webb
                                                    Communities, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   acts are not illegal.  Defendants' reliance on <u>Flint v. Dennison</u>, 488 F.3d 816, 826 (9th Cir. 2007) is
     misplaced since neither party there disputed the relevant facts and the appellate court affirmed the
28   district court's grant of summary judgment.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1

**CERTIFICATE OF SERVICE**

2   I hereby certify that on the _3rd_ day of April 2009, a true and correct copy of the

3   foregoing REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY

4   JUDGMENT was served by E-filing to the following:

5

6   Michael J. Nuñez, Esq.               Charles Pollock, Esq.
    Jeremiah Pendleton, Esq.             LAW OFFICES OF CHARLES M. POLLOCK
    MURCHISON & CUMMING, LLP             10161 Park Run Dr.
7   6900 Westcliff Dr.                   Las Vegas, NV 89145
    Suite 605
8   Las Vegas, NV 89145

9

10                                       An employee of Lionel Sawyer & Collins

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1

**Exhibits**

2    48    5/25/07 Wilson email (Depo. Ex. 61)

3    49    Affidavit of Lynda Sue Mabry, Esq.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

# EXHIBIT 48

# EXHIBIT 48

11/29/08 7:56

**From:** John Wilson (mcmc_john@yahoo.com)
**To:** Office; Erin OBrien
**Date:** Friday, May 25, 2007 9:10:34 PM
**Cc:** Chuck Partington; John Wilson; Vince Farruggia
**Subject:** Re: Fwd: Robert Barbin 2570 Terrytown Henderson Property

to everyone

McMc does not send copies to homeowners when they are signed up with Pollock. So this book should not be printed.

Lori

You can bill this as soon as the Cp is completed. Send invoice and report via Email to Charles Pollack office and Cc jean.

Thanks
John

*Office <mcmc_lasvegas@yahoo.com>* wrote:

Erin - I show that Vince sent this completed book to you for print on the 19th of May. Please let me know when it is ready to send to Charles Pollock. Thank you. Lori

Note: forwarded message attached.

Be a better Globetrotter. Get better travel answers from someone who knows.
Yahoo! Answers - Check it out. From: "Charles Pollock" <cmp@myhouselaw.com>
To: <mcmc_lasvegas@yahoo.com>
CC: "'Nathan Brooks'" <nbrooks@myhouselaw.com>,
"'Jeanne Stewart'" <JHS@myhouselaw.com>
Subject: Robert Barbin 2570 Terrytown Henderson Property
Date: Thu, 24 May 2007 15:29:45 -0700

Mr. Barbin has retained us to represent him in regard to his residence located at 2570 Terrytown in Henderson. We understand that you have already inspected the home. When the inspection report is available, please forward it to us.

Thank you.

Charles M. Pollock
LAW OFFICES OF CHARLES M. POLLOCK
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
T: (702) 515-7442
F: (702) 515-7443



EXHIBIT

61

Farruggia 12/18/08

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance on this message. If you have received this message in error, please notify us immediately by return e-mail and delete this message and any attachments from your computer system. We do not waive any attorney-client, work product or other privilege by sending this e-mail or attachment. Thank you.

Boardwalk for $500? In 2007? Ha!
Play Monopoly Here and Now (it's updated for today's economy) at Yahoo! Games.

PAR000239

**EXHIBIT 49**

**EXHIBIT 49**

### AFFIDAVIT OF LYNDA SUE MABRY, ESQ.

State of Nevada )
               ) ss:
County of Clark )

Being first duly sworn, Lynda Sue Mabry deposes and says that:

1.      I am an attorney with the law firm Lionel Sawyer & Collins, counsel for Del Webb Communities, Inc., ("Del Webb"). I make this Affidavit in Support of Plaintiff Del Webb's Reply in Support of Motion for Partial Summary Judgment in Case No. 2:08-cv-00571-RCJ-GWF, titled "Del Webb Communities, Inc., Plaintiff, vs. Charles Leslie Partington d/b/a M.C. Mojave Construction, John Wilson, individually, and Doe Individuals I-X, inclusive, and Roe Entities I-X, inclusive, Defendants," now pending in the United States District Court for the District of Nevada (the "Litigation"). Except as to matters stated on information and belief, I have personal knowledge of the matters stated herein and would be competent to testify to them if called upon to do so. As to matters stated on information and belief, I am informed and believe them to be true.

2.      Attached to the Reply as Exhibit 48 is a true and correct copy of an email dated May 25, 2007, written by defendant John Wilson and produced by defendants as Document PAR00238.

LYNDA SUE MABRY

Subscribed and sworn to before me
this __1st__ day of April, 2009.

_____
Notary Public

S. M. RUSSELL
Notary Public State of Nevada
No. 96-5480-1
My appt. exp. Nov. 22, 2012

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888